IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL HERNANDEZ CASTRO,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>CITY OF HANFORD, COUNTY<br>OF KINGS,<br><br>　　　　Defendants.<br>_____ / | CASE NO. CV-F-05-1405 LJO DLB<br><br>**ORDER ON DEFENDANT CITY<br>OF HANFORD'S MOTION FOR SUMMARY<br>JUDGMENT OR IN THE ALTERNATIVE<br>MOTION FOR PARTIAL SUMMARY<br>JUDGMENT** |

On December 17, 2007, defendant City of Hanford filed a notice of motion for summary judgment or in the alternative, partial summary judgment pursuant to Fed.R.Civ.P. 56. On January 3, 2008, plaintiff Manuel Hernandez Castro filed his opposition to the motion. Defendant City filed its reply brief on January 10, 2008. The hearing set of January 17, 2008 was vacated and the matter was hereby submitted on the pleadings. See Local Rule 78-230(h). Having considered the moving, opposition and reply papers, as well as the Court's file, the Court issues the following order.

**FACTUAL AND PROCEDURAL BACKGROUND**

This case involves plaintiff's claims for unconstitutional arrest and detention made on the basis of mistaken identity. On November 24, 2004, at approximately 6:00 p.m., Manuel Hernandez Castro went to his brother's house located at 1387 Echo Lane in Hanford, California to feed his brother's pets. When Manuel tried to enter the garage, the house alarm went off.

Officers Dale Williams and Gabriel Jimenez of the Hanford Police Department were dispatched to 1387 Echo Lane in Hanford, California, to respond to a report of a burglar alarm sounding at that location. During their initial contact with Plaintiff, the officers asked Plaintiff to identify himself. Plaintiff identified himself by name and provided his date of birth. He showed them a valid Oregon driver's license and an expired California driver's license, showing his name as Manuel Hernandez

Castro.

Using his police radio, Officer Jimenez contacted his dispatch center and requested that a warrant check be performed based on the identifying information supplied by the Plaintiff. In response to the requested warrant check, the dispatch center advised Officer Jimenez that Plaintiff's information appeared to match the subject of at least one outstanding, no-bail arrest warrant in Sacramento County. Officer Williams also heard this information on his own radio. Officer Jimenez informed Plaintiff of what he had been told by the dispatcher regarding the warrant check and Plaintiff denied having any outstanding warrants.

One of the officers expressed a belief that Mr. Castro was the Manuel Hernandez Patino. Mr. Castro told the officer that he was mistaken. The Sacramento Sheriff's Department advised the King's County Sheriff's Department that Manuel Hernandez Patino was five feet, three inches tall; and weighed 170 pounds. Mr. Castro is five feet, six inches tall, and weighs 200 pounds.

The officers arrested Mr. Castro, handcuffed him and transported him to Kings County Jail. One of the officers told Mr. Castro that when they got to the Kings County Jail, they would take his fingerprints and if he wasn't Manuel Hernandez Patino, he would be released. Mr. Casto's fingerprints were not checked by the Hanford Police Department while he was in their custody. Mr. Castro was transferred to the Sacramento County Sheriffs station on November 30, 2004. Soon after arriving there, Mr. Castro's fingerprints were taken and compared with those belonging to Manuel Hernandez Patino, and determined that Mr. Castro was not the subject of the warrant, Manuel Hernandez Patino. He was released that same evening. He was incarcerated for seven (7) days.

Plaintiff alleges the following claims for relief:

1. First Claim - Violation of the Fourth and Fourteenth Amendment
2. Second Claim - False Arrest and False Imprisonment
3. Third Claim - Negligence
4. Fourth Claim - Intentional Infliction of Emotional Distress
5. Fifth Claim - Violation of Art. 1, §7(a) and 13 of the California Constitution
6. Sixth Claim - Violation of Due Process of the United States Constitution

**ANALYSIS AND DISCUSSION**

Plaintiff argues that he was wrongly arrested despite substantial discrepancies in the arrest warrant description of suspects and unlawfully detained when the City failed to conduct a "live scan" evaluation as to his identity.

**A.    Summary Judgment Standard**

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact." F.R.Civ.P. 56( c); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467 (1962); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir. 1985); *Loeh v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The criteria of "genuineness" and "materiality" are distinct requirements. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The requirement that an issue be "genuine" relates to the quantum of evidence the plaintiff must produce to defeat the defendant's summary judgment motion. There must be sufficient evidence "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

"As to materiality, the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial," and in such circumstances, summary judgment should be granted "so long as whatever is before the . . . court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56( c), is satisfied." *Celotex Corp. v. Catarett*, 477 U.S. 317, 322 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quoting F.R.Civ.P. 56(e)).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968) *T.W. Elec. Serv.*, 809 F.2d at 631. The opposing

3

party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted). The opposing party's evidence is to be believed and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255; *Matasushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.     Municipal Liability under *Monell***

Plaintiff filed a civil rights, 42 U.S.C. § 1983 ("Section 1983") action, alleging Fourth and Fourteenth violations of the United States Constitution. Plaintiff also alleges violation of the Due Process clause of the Constitution. Section 1983 "creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights." *Squaw Valley Development Co. v. Goldberg*, 375 F.3d 936, 943 (9th Cir. 2004).

In this case, the local government entity, the City of Hanford, is defendant. The individual officers are not named as defendants. Since the individuals are not defendants, whether the City is liable for constitutional violations turns on the standards established in the seminal case of *Monell v. Department of Social Services*.

**1.     Standards for Municipality Liability Under *Monell***

A local government unit may not be held liable for the acts of its employees under a respondeat superior theory. *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct. 275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989). "[A] local government may not be sued for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those who edicts or actions may fairly be said to represent official policy, includes the injury that the government as an entity is responsible under §1983." *Monell,* at 98 S.Ct. 2038. Thus, the City cannot be liable for the conduct of the officers solely on the basis of respondeat superior. Plaintiff must show that the officers conduct represents City policy. *See City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197 (1989) (inadequate police medical training representing a city policy may serve as basis for §1983 case); *Pembaur v. City*

*of Cincinnati*, 475 U.S. 469, 478-480, 106 S.Ct. 1292 (1986).

One way to show a municipality is liable for violating a constitutional right is to show it acted pursuant to a policy, practice or custom to intentionally deprive plaintiff of a federally protected right. "Only if a plaintiff shows that his injury resulted from a 'permanent and well-settled' practice may liability attach for injury resulting from a local government custom." *Thompson*, 885 F.2d at 1444. "[O]fficial policy must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445 (1981) (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. 2018); *see Rizzo v. Goode*, 423 U.S. 362, 370-377, 96 S.Ct. 598 (1976) (general allegation of administrative negligence fails to state a constitutional claim cognizable under section 1983). "The existence of a policy, without more, is insufficient to trigger local government liability under section 1983." *Oviatt v. Pearce*, 954 F.2d 1470, 1477 (9th Cir. 1992). A "plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Bryan County Commissioners v. Brown*, 520 U.S. 397, 404, 117 S.Ct. 1382 (1997). A plaintiff must demonstrate that a defendant's policy was "closely related to the ultimate injury." *City of Canton*, 489 U.S. at 391, 109 S.Ct. at 1206.

A second way to hold a local government entity liable for failing to act to preserve a constitutional right is for a plaintiff to demonstrate that the official policy evidences a deliberate indifference to plaintiff's constitutional rights. *Oviatt*, 954 F.2d at 1477; *See Gibson v. County of Washoe*, 290 F.3d 1175, 1185 (9th Cir. 2002) (setting forth the "two paths" to municipal liability), *cert. denied,* 537 U.S. 1106 (2003). Such indifference arises when the need for more or different action "is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390, 109 S.Ct. at 1205; *Oviatt*, 954 F.2d at 1478. A municipality's failure to train may create liability where plaintiff shows (1) he was deprived of a constitutional right, (2) the City had a training policy that amounts to deliberate indifference to the constitutional rights of the persons' with whom its police officers are likely to come into contact; and (3) his constitutional injury would have been avoided had the City properly trained those officers. *See*

*Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001).

### 2. Plaintiff's Argument on *Monell*

In his complaint, plaintiff alleges that City of Hanford had a policy, practice, pattern and custom to "(1) arrest individuals when there is reason to believe that the person being arrested is not the person sought to be arrested; (2) strip search arrestees at the jail, even where there is reason to believe the person in custody is not the person sought to be arrested; (3) continue to incarcerate individuals, and refuse to release them, even when there is reason to believe that the person is not the person sought to be arrested; and (4) not to provide medical treatment to arrested persons who are ill." (Complaint ¶10.) Plaintiff alleges that defendant failed to take disciplinary action and ratified the acts of misconduct by its officers. (Complaint ¶11.) Further, plaintiff alleges that the City has not have not effectively trained their officers with regard to the proper Constitutional and statutory limits of the exercise of their authority . . ." (Complaint ¶12.)

Defendant moves for summary judgment on the ground that plaintiff lacks evidence of any policy, practice or custom to support his claims. Defendant argues that there "is absolutely no evidence to support the contention that the City of Hanford had a policy, practice, pattern and/or custom of encouraging or permitting policy officers to arrest individuals without a reasonable belief that they were the subject of an arrest warrant." (Doc. 28, Moving Papers p. 12.)

Plaintiff argues, however, that it is defendant's burden in this motion <u>to produce evidence</u> that plaintiff lacks evidence to support the Monell claim. Plaintiff states that it is insufficient for defendant to merely <u>argue</u> that plaintiff lacks evidence. Plaintiff states that defendant must <u>present evidence</u> that plaintiff lacks the necessary evidence to support a *Monell* claim. (Doc. 33, Opposition p.4:4-8.) By implication, plaintiff's position is that until defendant makes an adequate showing that plaintiff lacks evidence, plaintiff has no burden to produce evidence of the policy, custom or practice which plaintiff challenges. Indeed, in his opposition, plaintiff failed to identify or provide any evidence of the policies, customs or practices at issue in the litigation.

Defendant has carried its burden in this motion. The moving party may carry its initial burden on summary judgment by "showing" the opposing party lacks sufficient evidence to carry its ultimate burden of persuasion at trial; i.e., it does not have evidence from which a jury could find an essential

6

1  element of the opposing party's claim or defense. *Celotex Corp.*, 477 U.S. 317, 325, 106 S.Ct. 2548,
2  2554; *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The
3  moving party must identify the specific issue or issues on which it claims the opposing party has no
4  supporting evidence, and demonstrate the absence of such evidence: "It is enough for the movant to
5  bring up the fact that the record does not contain such an issue and to identify that part of the record
6  which bears out his assertion." *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.*, 838 F2d 268,
7  273 (8th Cir. 1988).

8  Here, Defendant has argued that plaintiff lacks evidence of an unconstitutional policy, practice
9  or custom. Defendant identified the issue for which plaintiff lacks evidence - that there is no policy,
10 custom or practice of unlawful arrest or detention. Defendant identifies the specific allegations from
11 plaintiff's complaint for which defendant contends plaintiff lacks evidence. Defendant then states that
12 "there is absolutely no evidence to support the contention that City had a policy, practice, pattern and/or
13 custom of encouraging or permitting police officers to arrest individuals without a reasonable belief that
14 they were the subject of an arrest warrant." (Doc. 28, Moving papers p.12.) Thus, the City has identified
15 the specific issues for which plaintiff lacks evidence.

16 Plaintiff's argument is incorrect. It is plaintiff's burden to produce evidence of the policy, pattern
17 and practice exists. *See e.g*, *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir.1989) (nonmoving party
18 has burden of presenting specific facts showing genuine issue for trial). A non-moving party who bears
19 the burden of proof at trial to an element essential to its case must make a showing sufficient to establish
20 a genuine dispute of fact with respect to the existence of that element of the case or be subject to
21 summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265
22 (1986). "A complete failure of proof concerning an essential element of the nonmoving party's case
23 necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 US at 323, 106 S.Ct. at
24 2552.

25 Plaintiff has failed to produce any evidence of a custom, practice or policy which allegedly
26 violated his constitutional rights. Plaintiff does not present evidence that there is a custom, practice or
27 policy as for arresting individuals on mistaken identity when there is reason to believe that the person
28 being arrested is not the person sought to be arrested. Plaintiff does not present evidence that there is

a custom, practice or policy as to strip search arrestees at the jail. Plaintiff does not present evidence that there is a custom, practice or policy as to wrongful detention on misidentification. Plaintiff does not present evidence that there is a custom, practice or policy for not providing medical treatment for persons in custody. Plaintiff does not present evidence that there is a custom, practice or policy as to failure to train officers. Plaintiff thus has failed to present evidence that any constitutional violation was the result of a City of Hanford custom, practice or policy.

Arguably, the only "policy" identified is the one time failure to perform a "live scan" fingerprinting of plaintiff while he was in custody at the City of Hanford. Even accepting plaintiff's argument that a live scan should have been performed, proof of random acts or isolated events are insufficient to establish custom, policy or practice. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989). "Only if a plaintiff shows that his injury resulted from a "permanent and well-settled" practice may liability attach for injury resulting from a local government custom." *Id.* at 1444 ("the district court properly dismissed this portion of Thompson's § 1983 action as he alleged no facts which suggested that the alleged constitutional deprivation occurred as the result of County policy or custom.") Even assuming plaintiff's arrest and detention where unconstitutional, plaintiff cannot prevail against the City because he has failed to show any alleged custom, practice or policy which allegedly violated his rights. Accordingly, summary judgment on his federal claims is proper.

**C.   Negligence**

In his opposition, plaintiff claims that the City of Hanford's officers acted negligently in conducting the investigation to confirm that he was the subject of the warrant. Plaintiff argues that "they acted negligently in conducting the investigation to verify that he was the correct suspect." (Doc. 33, Opposition p. 5.) Plaintiff argues that a live scan should have been conducted. Plaintiff's negligence claim has two issues (1) the City's direct liability, and (2) liability based on respondeat superior for the arrest by mistaken identity, and the prolonged detention.

**1.   City's Direct Liability**

The California Tort Claims Act, Cal. Gov. Code, §§ 810, et. seq., does not provide that a public entity is liable for its own conduct or omission to the same extent as a private person or entity. *Zelig v. County of Los Angeles*, 27 Cal.App.4th 1112, 1128, 119 Cal.Rptr.2d 709, 722 (2002). California

Government Code section 815(a) provides that a "public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person," "[e]xcept as otherwise provided by statute." Certain statutes provide expressly for public entity liability in circumstances that are somewhat parallel to the potential liability of private individuals and entities, but the Tort Claims Act's intent "is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances." *Brown v. Poway Unified School Dist.*, 4 Cal.4th 820, 829, 15 Cal.Rptr.2d 679 (1993).

Direct tort liability against a municipality must be authorized by statute. In *Munoz v. City of Union City*, 120 Cal.App.4th 1077, 1112, 16 Cal.Rptr.3d 521 (2004), the Court held direct tort liability of public entities must be based on a specific statute declaring them to be liable, or at least creating some specific duty of care, and not on the general tort provisions of Civil Code section 1714." In *Munoz*, the court reversed a jury verdict finding that a city was negligent in training and supervising an officer who shot and killed a criminal suspect. *Munoz*, 120 Cal.App.4th at 1113-14. The *Munoz* Court reasoned that the city could not be liable for the officer's negligence because the plaintiff had cited no statutory basis either declaring the city directly liable for the officer's actions or creating a specific duty of care. The *Munoz* court expressly held that California law does not provide a basis to hold a municipality liable for its alleged "negligence in the selection, training, retention, supervision, and discipline of police officers" the statutory framework requires, as a condition to the injured party's recovery on a direct liability theory against a governmental agency, that the injured party identify a "specific statute declaring [the entity] to be liable, or at least creating some specific duty of care" by the agency in favor of the injured party *De Villers v. County of San Diego,* 156 Cal.App.4th 238, 247, 67 Cal.Rptr.3d 253, 259 (2007).

As in *Munoz*, plaintiff has failed to cite any statutory basis to find the County liable under his negligence causes of action. Thus, the City of Hanford is not directly liable for plaintiff's alleged injuries. Any liability, therefore, must arise under respondeat superior.

### 2. City's Respondeat Superior Liability

The City is protected from respondeat superior liability. A public entity is liable for injury proximately caused by an act or omission of "an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action

9

against that employee...." (Gov.Code, § 815.2 , subd. (a).) What is necessary, under this theory, is "to show that some employee of the public entity tortiously inflicted the injury in the scope of his employment under circumstances where he would be personally liable." (Legis. Com. com., 32 West's Ann. Gov.Code, supra, foll. § 815.2, p. 179.) Public employees are not liable for injury resulting from the exercise of discretion. (Gov.Code, § 820.2.)

### 3. Negligence in the Arrest v. Negligence in the Prolonged Detention

Plaintiff relies on *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1381 (9th Cir. 1998). *Martinez*,141 F.3d. 1373 (9th Cir.1998) is based on California tort law and distinguishes between negligence in the initiation of a prosecution and negligence that arises after a prolonged detention. The *Martinez* court found that immunity protected police officers from liability for a negligent investigation that led to an arrest. *Id.* at 1381. However, there was no such immunity for an allegedly negligent failure to investigate the validity of an incarceration after sufficient notice. *Id.* The Los Angeles Police Department (LAPD) initiated the investigation that led to plaintiff's arrest in Mexico. The LAPD sought and obtained the Mexican warrant for Martinez's arrest. *Id.* at 1377.  After Martinez was arrested, his attorney presented the LAPD with evidence establishing the Mexican authorities arrested the wrong man. *Id.* at 1378.  After receiving this information, the LAPD delayed investigating further and taking steps to have Martinez released. *Id.* at 1381.  Martinez was incarcerated for 59 days.

The Ninth Circuit held the LAPD could be liable for false imprisonment and negligence under a theory of prolonged detention, even though the LAPD was not the jailer, because the LAPD had a "special relationship" with Martinez. *Martinez*, 141 F.3d at 1380-1381. The "special relationship" arose because the Mexican authorities arrested and held Martinez for prosecution in Mexico in response to the LAPD's investigation. *Ibid.* The LAPD knew facts that would have caused a reasonable person to investigate the validity of Martinez's incarceration and to seek Martinez's release. *Id.* at 1381.  Thus, *Martinez* held that a jailer has a duty to investigate the validity of an incarceration after sufficient notice.

In plaintiff's case, he argues two separate theories of negligence.  The first is negligence in the arrest of plaintiff.  Any claims of negligence in the arrest of plaintiff is barred by immunity under *Martinez*.  Accordingly, partial summary judgment will be granted on the theory of negligent in the arrest of plaintiff.

1   A theory of negligence based on a prolonged detention, however, is not so barred under *Martinez*. A theory of negligence in the prolonged detention of plaintiff may proceed to trial unless there are no triable issues of fact.

This case, as compared with the facts of *Martinez*, shows that the City of Hanford stands in the place of the Mexican authorities. The City of Hanford was holding plaintiff at the request of the County of Sacramento, just as Mexico held Martinez at the request of the LAPD. Unlike the plaintiff in *Martinez,* plaintiff here has not presented any evidence or authority that the City had a "special relationship" to plaintiff. Here, unlike in *Martinez*, City was not independently presented with facts which would cause it to investigate plaintiff's identity. Only plaintiff's protests were the basis of facts to challenge plaintiff's identity.

Moreover, plaintiff has not presented any authority for the proposition that the City has a duty to employ a specific method to confirm the identity of a suspect. While plaintiff's position is that the City should have performed a "live scan," he has present no authority that the City had a duty to do so. *See Gallegos v. City of Los Angeles*, 308 F.3d 987, 992 (9th Cir. 2002) (officers are not mandated one and only one way for police to confirm the identity of a suspect.) Further, unlike the plaintiff in *Martinez*, who was held for 59 days, plaintiff here was held for 7 days. *Erdman v Cochise County, Ariz.*, 926 F.2d 877 (9th Cir. 1991) (a 12 day incarceration did not violate constitutional rights). Accordingly, summary judgment on this claim is appropriate.

**D.   Plaintiff's Cause Of Action For False Arrest Under California Law**

Plaintiff's second cause of action is for false arrest and false imprisonment under California law. Plaintiff argues that defendant has not introduced the actual warrants, and therefore, has failed to carry its burden of proof on the motion. Like the negligence claim, there are two separate "theories" of false imprisonment: (1) the arrest by mistaken identity, and (2) the prolonged detention.

"Under California law, the torts of false arrest and false imprisonment are not separate torts, as false arrest is "but one way of committing a false imprisonment." *Watts v. County of Sacramento* 256 F.3d 886, 891 (9th Cir. 2001). The tort of false imprisonment is the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short. *City of Newport Beach v. Sasse*, 9 Cal.App.3d 803, 810 (1970); *Asgari v. City of Los Angeles*, 15 Cal.4th 744,

11

757 (1997) ("The tort of false imprisonment is defined as the unlawful violation of the personal liberty of another. The confinement must be 'without lawful privilege.'") However, if an arrest is "lawful," there is no civil liability as a matter of law. *See e.g.*, *Salazar v. Upland Police Dept.*, 116 Cal.App.4th 934, 947 (2004) (Pen.Code, § 836); *Lopez v. City of Oxnard*, 207 Cal.App.3d 1, 7-9 (1989) (Pen.Code, § 847).) An arrest is valid if supported by probable cause. Probable cause to arrest exists if the facts known to the arresting officer would lead a person of ordinary care and prudence to entertain an honest and strong suspicion that an individual is guilty of a crime." *People v. Kraft*, 23 Cal.4th 978, 1037 (2000), *cert. denied*, 532 U.S. 908 (2001). The probable cause was not vitiated because there may have been "some room for doubt." *People v. Mower*, 28 Cal.4th 457, 473 (2002).

The police are statutorily immune for an arrest pursuant to a warrant if the warrant is regular on its face and the police acted without malice. Civil Code section 43.55 provides immunity to and precludes actions against "any peace officer who makes an arrest pursuant to a warrant of arrest regular upon its face if the peace officer in making the arrest acts without malice and in the reasonable belief that the person arrested is the one referred to in the warrant." Penal Code section 847 precludes actions for civil liability against any peace officer for false imprisonment if he was acting within the scope of his authority and the arrest was lawful or if, at the time of the arrest, the officer had reasonable cause to believe the arrest was lawful. Penal Code section 847 protects a peace officer who acts on probable cause to arrest despite the officer's alleged negligence. *See Hamilton v. City of San Diego*, 217 Cal.App.3d 838, 843, 847, 266 Cal.Rptr. 215, 218 (1990).

Here, plaintiff has not established that the invalidity of the warrant by which plaintiff was arrested. *See Fermino v. Fedco, Inc.*, 7 Cal.4th 701, 715 (Cal. 1994) (identifying an arrest "without lawful privilege" as an essential element for the general tort of false arrest/false imprisonment). An abstract of an arrest warrant is sufficient to support an arrest. *People v. Ramirez,* 202 Cal.App.3d 425, 428 (1988); *Cervantez v. J. C. Penney Co.*, 24 Cal. 3d 579, 156 Cal. Rptr. 198 (1979) (involving arrest by officers without a warrant and in which the court held that the establishment of lack of probable or reasonable cause is a necessary element in an action for false arrest or imprisonment). It was plaintiff's burden to show that the arrest was without lawful privilege and he has failed to do so.

Further, Plaintiff has not shown an unreasonable mistake by the officers in identification of

plaintiff as the subject of the warrant. The controlling mistaken identity case is *Hill v. California*, 401 U.S. 797, 802, 91 S.Ct. 1106 (1971) which held: "[W]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *See Blackwell v. Barton*, 34 F.3d 298, 303 (5th Cir.1994).

The facts are not disputed. Plaintiff showed the officers a California driver's license issued to "Manuel Castro Hernandez," born September 20, 1973. The license listed Plaintiff as being 5'6, 150 lbs, with brown hair and brown eyes. The signature on the license read "Manuel Hernandez Castro." (Doc. 35, Plaintiff's Response to Undisputed Facts, no. 5.) Plaintiff's Oregon driver's license was issued to "Manuel Hernandez Castro," born September 20, 1973. The license listed Plaintiff as being 5'6 and 200 lbs. The signature on the license read "Manuel Hernandez." (Doc. 35, Plaintiff's Response to Undisputed Facts, no. 6.) The Sacramento County warrant was for Manuel Hernandez Patino. At different points in time during the investigation, Plaintiff identified himself as "Manuel Hernandez", "Manuel Castro" and also provided at least one variation of his complete first, middle and last name. (Doc. 35, Plaintiff's Response to Undisputed Facts, no. 10.) The officers made additional calls to ensure that plaintiff was the subject of the warrant. The dispatch center subsequently informed Officers Jimenez and Williams that the information regarding Plaintiff's identity including his birth date, did match the subject of an outstanding arrest warrant from Sacramento, CA. (Doc. 35, Plaintiff's Response to Undisputed Facts, no. 12.) Indeed, plaintiff acknowledges that "[b]ased on the totality of the circumstances, the facts in their possession at the time and in reliance upon the information provided to them by their dispatch center, Officers Jimenez and Williams believed that Plaintiff was the subject of an outstanding arrest warrant and arrested him on the basis of that belief." (Doc.35, Plaintiff's Response to Undisputed Facts, no. 14.) Accordingly, based upon the reasonableness of the identification, there is no disputable issue of fact as to the mistaken identity arrest.

The remaining theory of liability is that the prolonged time of incarceration resulted in false imprisonment. The same arguments under *Martinez* in the negligence claim control for the alleged false imprisonment based on prolonged time of incarceration. Accordingly, summary judgment on the false imprisonment is appropriate.

E.     **Plaintiff's Cause Of Action For Intentional Infliction Of Emotion Distress Under California Law**

The elements of a cause of action for intentional infliction of emotional distress are: (1) defendant's outrageous conduct; (2) defendant's intention to cause, or reckless disregard of the probability of causing, emotional distress; (3) severe emotional distress; and (4) an actual and proximate causal link between the tortious conduct and the emotional distress. *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155, n. 7, 233 Cal.Rptr. 308 (1987); *Nally v. Grace Community Church of the Valley*, 47 Cal.3d 278, 300, 253 Cal.Rptr. 97, 110 (1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1644 (1989). The "[c]onduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Davidson v. City of Westminister*, 32 Cal.3d 197, 209, 185 Cal.Rptr. 252 (1982) (quoting *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593, 156 Cal.Rptr.198 (1979)). Conduct is extreme and outrageous when it is of a nature which is especially calculated to cause, and does cause, mental distress. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 617, 262 Cal.Rptr. 842, 857 (1989).

While the outrageousness of a defendant's conduct normally presents an issue of fact to be determined by the trier of fact, the court may determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. *Trerice v. Blue Cross of California*, 209 Cal.App.3d 878, 883, 257 Cal.Rptr. 338, 340 (1989); *Fowler v. Varian Associates, Inc.*, 196 Cal.App.3d 34, 44, 241 Cal.Rptr. 539 (1989).

Here, defendant challenged three of the elements of the cause of action: (1) defendant's outrageous conduct; (2) defendant's intention to cause, or reckless disregard of the probability of causing, emotional distress; and (3) severe emotional distress. Defendant presented evidence that the officers were justifiably called to plaintiff's brothers house when the house alarm went off. The officers reasonably requested identification from plaintiff when they encountered him at the home. Upon check with dispatch and discovering a warrant, they verified the birth date of the person with the warrant and verified the physical description. Once in custody, the officers again verified that plaintiff was the subject of the outstanding warrant. Thus, the conduct of the officers in arresting plaintiff demonstrates

a lack of extreme and outrageous conduct with the intention of harming plaintiff.

The burden then shifts to plaintiff to raise a triable issue of fact as to the elements of its cause of action. Plaintiff's sole argument is that defendant has not produced the warrant and thus cannot prove essential elements of defendant's defense of Civ.Code §43.5.

Defendant's arguments, however, are two-pronged. Defendant challenges plaintiff's prima facie case, and also asserts a defense of immunity.

Here, plaintiff has not produced evidence that the police officers engaged in "extreme and outrageous conduct" with the "intent" to cause "severe emotional distress." Plaintiff has not presented evidence that his arrest or detention was done for improper or wrongful motive. Accordingly, summary judgment on this claim should be granted.

### F. Violations of California Constitution

Plaintiff alleges that his liberty interest under the California Constitution, Article 1, §§7 and 13, was violated by his detention.

In *Katzberg v. Regents of University of California,* 29 Cal.4th 300, 127 Cal.Rptr.2d 482 (2002), the California Supreme Court concluded that the due process provision of article I, section 7, subdivision (a), of the California Constitution (art. I, § 7, subd. (a)) does not authorize actions to recover monetary damages for violations of due process "liberty" interests, absent a pertinent statute or established common law tort. The Court determined that the test for the existence of a constitutional tort involves a two-step inquiry: first, courts should examine whether the intent of the pertinent constitutional provision is to authorize a damages action; and second, absent clear indicia of intent, courts should weigh several factors, including whether an adequate remedy already exists for the constitutional violation. *Id.* at 317. Applying this test, the Katzberg court held that there was no evidence that the intent of the provision is to provide a damages remedy regarding due process "liberty" interests, and that numerous factors weighed against recognizing a constitutional tort, including the availability of a remedy in mandamus. *Id.* at 317-329.

*Katzberg* is dispositive of this case. Thus, California does not recognize the private right of action in plaintiff's fifth cause of action. Accordingly, summary adjudication on this claim is appropriate.

The claim of violation under Article 1, §13 was not directly adjudicated in *Katzberg*. The California Supreme Court noted, however, that no precedential authority exists for recognizing a private right of action in damages for violations of Article 1, §13 of the California Constitution. *Katzberg*, 29 Cal. 4th at 324. More importantly, this Court, the United States District Court for the Eastern District of California, has consistently held that private plaintiffs cannot assert a claim for damages directly under Article 1, §13 of the California Constitution. Rendon v. City of Fresno, 1:05-CV-00661 OWW DLB, 2005 U.S. Dist. LEXIS 31623, 2005 WL 3144144 (E.D. Cal. Nov. 23, 2005); Weimer v. County of Kern, 1:06-CV-00735 OWW DLB, 2006 U.S. Dist. LEXIS 93539, 2006 WL 3834237 (E.D. Cal. Dec. 22, 2006); Buzayan v. City of Davis Police Dep't, 2:06-CV-01576-MCE-DAD, 2007 U.S. Dist. LEXIS 60032 (E.D. Cal. Aug. 8, 2007).

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court GRANTS defendant City of Hanford's motion for summary judgment.

The clerk of this Court is DIRECTED to enter judgment in favor of defendant City of Hanford and against plaintiff.

IT IS SO ORDERED.

**Dated:   January 22, 2008**              /s/ Lawrence J. O'Neill
                                           UNITED STATES DISTRICT JUDGE