IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MANUEL HERNANDEZ CASTRO,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>CITY OF HANFORD, COUNTY OF KINGS,<br><br>　　　　　Defendants.<br>_____/ | CASE NO. CV-F-05-1405 LJO DLB<br><br>**ORDER ON DEFENDANT COUNTY OF KINGS' MOTION FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE MOTION FOR PARTIAL SUMMARY JUDGMENT** |

　　　　On February 1, 2008, defendant County of Kings filed a notice of motion for summary judgment or in the alternative, partial summary judgment pursuant to Fed.R.Civ.P. 56. On February 15, 2008, plaintiff Manuel Hernandez Castro filed his opposition to the motion. Defendant County filed its reply brief on February 25, 2008. The hearing set for March 3, 2008 was vacated and the matter was hereby submitted on the pleadings. See Local Rule 78-230(h). Having considered the moving, opposition and reply papers, as well as the Court's file, the Court issues the following order.

## FACTUAL AND PROCEDURAL BACKGROUND

　　　　This case involves plaintiff's claims for unconstitutional arrest and detention made on the basis of mistaken identity. On November 24, 2004, at approximately 6:00 p.m., Manuel Hernandez Castro went to his brother's house located at 1387 Echo Lane in Hanford, California. When Manuel tried to enter the garage, the house alarm went off.

　　　　Officers Dale Williams and Gabriel Jimenez of the Hanford Police Department were dispatched to 1387 Echo Lane in Hanford, California, to respond to a report of a burglar alarm sounding at that location. During their initial contact with Plaintiff, the officers asked Plaintiff to identify himself. Plaintiff identified himself by name and provided his date of birth. He showed them a valid Oregon driver's license and an expired California driver's license, showing his name as Manuel Hernandez

Castro.

Using his police radio, Officer Jimenez contacted his dispatch center and requested that a warrant check be performed based on the identifying information supplied by the plaintiff. In response to the requested warrant check, the dispatch center advised Officer Jimenez that plaintiff's information appeared to match the subject of at least one outstanding, no-bail arrest warrant in Sacramento County. Officer Williams also heard this information on his own radio. Officer Jimenez informed plaintiff of what he had been told by the dispatcher regarding the warrant check. Plaintiff denied having any outstanding warrants.

One of the officers expressed a belief that Mr. Castro was the Manuel Hernandez Patino. Mr. Castro told the officer that he was mistaken. The Sacramento Sheriff's Department advised the King's County Sheriff's Department that Manuel Hernandez Patino was five feet, three inches tall; and weighed 170 pounds. Mr. Castro is five feet, six inches tall, and weighs 200 pounds.

The officers arrested Mr. Castro, handcuffed him and transported him to Kings County Jail. One of the officers told Mr. Castro that when they got to the Kings County Jail, they would take his fingerprints and if he was not Manuel Hernandez Patino, he would be released. Mr. Casto's fingerprints were not checked by the Hanford Police Department while he was in their custody. His finger prints were not checked by the County of Kings while housed in the jail. Mr. Castro was transferred to the Sacramento County Sheriffs station on November 30, 2004. Soon after arriving, Mr. Castro's fingerprints were taken and compared with those belonging to Manuel Hernandez Patino. It was determined that Mr. Castro was not the subject of the warrant. He was released that same evening. He was incarcerated for seven (7) days.

Plaintiff alleges the following claims for relief:

1. First Claim - Violation of the Fourth and Fourteenth Amendment
2. Second Claim - False Arrest and False Imprisonment
3. Third Claim   - Negligence
4. Fourth Claim - Intentional Infliction of Emotional Distress
5. Fifth Claim - Violation of Art. 1, §7(a) and 13 of the California Constitution
6. Sixth Claim - Violation of Due Process of the United States Constitution.

**ANALYSIS AND DISCUSSION**

Plaintiff argues that he was wrongly arrested despite substantial discrepancies in the arrest warrant description of the suspect and unlawfully detained when the County failed to conduct a "live scan" evaluation as to his identity.

**A.     Summary Judgment Standard**

On summary judgment, a court must decide whether there is a "genuine issue as to any material fact." F.R.Civ.P. 56( c); *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Poller v. Columbia Broadcast System*, 368 U.S. 464, 467 (1962); *Jung v. FMC Corp.*, 755 F.2d 708, 710 (9th Cir. 1985); *Loeh v. Ventura County Community College Dist.*, 743 F.2d 1310, 1313 (9th Cir. 1984). The criteria of "genuineness" and "materiality" are distinct requirements. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The requirement that an issue be "genuine" relates to the quantum of evidence the plaintiff must produce to defeat the defendant's summary judgment motion. There must be sufficient evidence "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248.

"As to materiality, the substantive law will identify which facts are material." *Anderson*, 477 U.S. at 248. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial," and in such circumstances, summary judgment should be granted "so long as whatever is before the . . . court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56( c), is satisfied." *Celotex Corp. v. Catarett*, 477 U.S. 317, 322 (1986). "If the party moving for summary judgment meets its initial burden of identifying for the court those portions of the material on file that it believes demonstrates the absence of any genuine issues of material fact," the burden of production shifts and the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987)(quoting F.R.Civ.P. 56(e)).

To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 290 (1968) *T.W. Elec. Serv.*, 809 F.2d at 631. The opposing

party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citations omitted). The opposing party's evidence is to be believed and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. *Anderson*, 477 U.S. at 255; *Matasushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

**B.      Plaintiff's Concession in his Opposition Brief**

In plaintiff's opposition brief (Doc. 53) he concedes summary adjudication is proper on certain claims:

> "Plaintiff concedes that summary adjudication of plaintiff's claims for Federal Civil Rights violations, California Constitutional violations, Intentional Infliction of Emotional Distress, and those based on the failure to provide medical needs is appropriate." (Doc. 53, Opposition Brief, p.2:21-23.)

Plaintiff concedes that the only claims that should remain are the Second Claim for False Arrest and False Imprisonment and the Third Claim for Negligence.

Even with the explicit concession in his opposition, plaintiff argues two points related to the alleged federal constitutional violations. Plaintiff states that "because of the existence of a readily available alternative to the incarceration of the wrong person, i.e, the 'live scan' technology, the incarceration of plaintiff was a violation of his Constitutional rights." (Doc. 53, Opposition p.4:4-6.) Plaintiff also states that "plaintiff was deprived of his liberty without due process of law." (Doc. 53, Opposition p. 4.)

This Court has previously adjudicated the federal claims in a similar summary judgment motion brought by co-defendant City of Hanford. (See Doc. 45.) Whether the County is liable for constitutional violations turns on the standards established in the seminal case of *Monell v. Department of Social Services*.

A local government unit may not be held liable for the acts of its employees under a respondeat superior theory. *Monell v. Department of Social Services*, 436 U.S. 658, 691, 98 S.Ct. 2018 (1978); *Davis v. Mason County*, 927 F.2d 1473, 1480 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct. 275 (1991); *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989). "[A] local government may not

be sued for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those who edicts or actions may fairly be said to represent official policy, includes the injury that the government as an entity is responsible under §1983." *Monell,* at 98 S.Ct. 2038. Thus, the County cannot be liable for the conduct of the jailer solely on the basis of respondeat superior. Plaintiff must show that the jailer's conduct represents County policy. *See City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197 (1989) (inadequate police medical training representing a city policy may serve as basis for §1983 case); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478-480, 106 S.Ct. 1292 (1986).

The only "policy" identified is the one time failure to perform a "live scan" fingerprinting of plaintiff while he was in custody. Even accepting plaintiff's argument that a live scan should have been performed, proof of random acts or isolated events are insufficient to establish custom, policy or practice. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th Cir. 1989). "Only if a plaintiff shows that his injury resulted from a "permanent and well-settled" practice may liability attach for injury resulting from a local government custom." *Id.* at 1444 ("the district court properly dismissed this portion of Thompson's § 1983 action as he alleged no facts which suggested that the alleged constitutional deprivation occurred as the result of County policy or custom.") Even assuming plaintiff's arrest and detention where unconstitutional, plaintiff cannot prevail against the County because he has failed to show any alleged custom, practice or policy which allegedly violated his rights. Accordingly, summary judgment on his constitutional claims is proper.[1]

**C.  False Arrest and Imprisonment and Negligence Claims**

In his opposition, plaintiff narrows the claims that he pursues to false imprisonment and

---

[1] Plaintiff's police practices expert, William Naber, submitted a declaration. Mr. Naber's declaration states: "The Kings County Sheriff's Office had a standing policy and practice to not positively identify prisoners arrested on 'out-of-county' warrants on and prior to November 24, 2004. This permanent practice demonstrates deliberate indifference to persons misidentified and imprisoned." (Doc. 52, Decl. Of William Naber, ¶8( c).) Mr. Naber's opinion, however, fails to identify any factual basis for his conclusion. He states that Assistant Sheriff Wheat testified as to a standing policy, but fails to identify or attach the factual basis for the conclusion of a "standing policy." "Expert opinion is admissible and may defeat summary judgment if it appears the affiant is competent to give an expert opinion and the factual basis for the opinion is stated in the affidavit, even though the underlying factual details and reasoning upon which it is based are not." *Bulthuis v. Rexall Corp.*, 789 F2d 1315, 1318 (9th Cir. 1985). Mr. Naber's declaration is unsupported by facts which led to this conclusion. Therefore, this opinion is inadmissible. Regardless, plaintiff has conceded this issue.

negligence. Plaintiff argues that the prolonged detention, without checking the "live scan," amounted to false imprisonment and negligence.[2]

Plaintiff relies upon *Martinez v. City of Los Angeles*, 141 F.3d 1373, 1381 (9th Cir. 1998), as he did in his opposition to the City of Hanford's motion for summary judgment. *Martinez* is based on California tort law and approved negligence and false imprisonment claims that arise after a prolonged detention. The *Martinez* court found that immunity protected the police officers from liability for a negligent investigation that led to an arrest. *Id.* at 1381. However, there was no such immunity for an allegedly negligent failure to investigate the validity of an incarceration after sufficient notice. *Id.* The Los Angeles Police Department (LAPD) initiated the investigation that led to plaintiff's arrest in Mexico. The LAPD sought and obtained the Mexican warrant for Martinez's arrest. *Id.* at 1377. After Martinez was arrested, his attorney presented the LAPD with evidence establishing the Mexican authorities arrested the wrong man. *Id.* at 1378. After receiving this information, the LAPD delayed investigating further and taking steps to have Martinez released. *Id.* at 1381. Martinez was incarcerated for 59 days.

The Ninth Circuit held the LAPD could be liable for false imprisonment and negligence under a theory of prolonged detention, even though the LAPD was not the jailer, because the LAPD had a "special relationship" with Martinez. *Martinez*, 141 F.3d at 1380-1381. The "special relationship" arose because the Mexican authorities arrested and held Martinez for prosecution in Mexico in response to the LAPD's investigation. *Ibid.* The LAPD knew facts that would have caused a reasonable person to investigate the validity of Martinez's incarceration and to seek Martinez's release. *Id.* at 1381. Thus, *Martinez* held that a jailer has a duty to investigate the validity of an incarceration after sufficient notice.

Plaintiff also cites *Perez-Torres v. State of California*, 42 Cal.4th 136, 64 Cal.Rptr.3d 155, 163 (2007). *Perez-Torres* decided whether the statutory immunity of Gov.Code 845.8 (liability of public entities) extended to plaintiff's continued incarceration after defendants knew or should have known he

---

[2] "Under California law, the torts of false arrest and false imprisonment are not separate torts, as false arrest is "but one way of committing a false imprisonment." *Watts v. County of Sacramento* 256 F.3d 886, 891 (9th Cir. 2001). The tort of false imprisonment is the nonconsensual, intentional confinement of a person, without lawful privilege, for an appreciable length of time, however short. *City of Newport Beach v. Sasse*, 9 Cal.App.3d 803, 810 (1970); *Asgari v. City of Los Angeles*, 15 Cal.4th 744, 757 (1997) ("The tort of false imprisonment is defined as the unlawful violation of the personal liberty of another. The confinement must be 'without lawful privilege.'")

was the wrong man. In *Perez-Torres,* a detainee brought action against State of California, parole agents, and others, alleging false imprisonment, negligence, and other claims, after he was mistakenly taken into custody as parolee and incarcerated in the county jail for 25 days. When plaintiff was taken to the jail, plaintiff repeatedly told the parole agent that they had the wrong man. The agent then realized there was a disparity between plaintiffs height (5 feet and 3 or 4 inches) and true-parolee's height (5 feet and 8 or 9 inches) as stated in the criminal records. The agent took photographs of plaintiff, and showed the photographs to another parole agent and a supervisor. The agent telephoned the federal Immigration and Naturalization Service to express doubts about plaintiff's identity; the agent was told that the picture of parolee and the jailed person matched. The state parole agents then decided that fingerprint verification was unnecessary. *Id.* at 140. The court held that, "the state defendants' conduct in keeping plaintiff in jail after they knew or should have known that he was the wrong man was . . . an action implementing the basic policy decision and thus outside the statutory immunity, making it subject to legal redress on the question of negligence by the state." *Perez-Torres v. State*, 42 Cal.4th 136, 145. Thus, the Court held that the state's immunity provision was "inapplicable to the state defendants' decision to keep plaintiff in jail after they knew or should have known" he was not the parolee.[3]

The test for "knew or should have known" is "that the sheriff have actual knowledge that the imprisonment of the plaintiff is unlawful or alternatively that he have some notice sufficient to put him, as a reasonable man, under a duty to investigate the validity of the incarceration." *Sullivan v. County of Los Angeles*, 12 Cal.3d 710, 719 (1974). In *Sullivan*, the sheriff allegedly failed to respond to an official notice of release sent through official channels. The *Sullivan* court found that the sheriff may be liable in damages for false imprisonment for his failure to investigate the validity of that official release notice.

Indeed, sheriffs may be responsible in damages for false imprisonment if they know the imprisonment is unlawful or if they are put on official notice sufficient to require investigation of its validity. *Lopez v. City of Oxnard,* 207 Cal.App.3d 1, 10, 254 Cal.Rptr. 556, 561 (1989). In *Lopez v.*

---

[3] Plaintiff did not cite *Perez-Torres* in his opposition to the City of Hanford's motion. *Perez-Torres* does indeed hold that the affirmative defense of immunity is inapplicable to the decision to hold a detainee when the jailer knew or should have known they had the wrong person. Defendant County, however, does not rely upon immunity.

1  *City of Oxnard*, a person arrested for drunk driving gave plaintiff Lopez's name, address and date of birth
2  as his own, and when the person failed to appear in court, a warrant was issued for plaintiff's arrest. After
3  Lopez was arrested on this warrant, the court provided him with a "disposition sheet" to carry with him,
4  stating that he was not the person described in the warrant. Nevertheless, plaintiff was arrested two more
5  times by officers who refused to investigate the validity of the disposition sheet. He sued for negligence,
6  false imprisonment, and intentional infliction of emotional distress. The court of appeals affirmed
7  judgment for defendants. Invoking Civil Code 43.55, the court held that because the warrant accurately
8  described plaintiff, defendants had a reasonable belief that the arrest was lawful. *Id.* at 8. The court
9  reasoned that arresting officers were required to "act swiftly and to make on-the-spot evaluations, often
10 under chaotic conditions." *Id.* at 7.

11 Moreover, the court held that the personnel at the jail, although not in the same situation as
12 officers on the street, were also justified in ignoring the disposition sheet. Such personnel were entitled
13 to rely on process and orders apparently valid on their face and were not required to look behind a valid
14 arrest warrant to investigate the validity of a "piece of paper" handed to them by plaintiff. *Id.* at 10-11.
15 "Jail personnel may not be similarly situated to police officers on the street, but they, too, are entitled
16 to rely on process and orders apparently valid on their face." *Lopez v. City of Oxnard*, 207 Cal.App.3d
17 at 9.

18 **D.      Plaintiff's Arguments Which Purport to Raise Issues of Fact**
19       **1.      Officers' Reasonable Belief**

20 Here, plaintiff argues that two issues of material fact exist from his prolonged detention.  First,
21 plaintiff argues that the question of whether the officers' beliefs were reasonable is one of fact which
22 should survive summary judgment. Plaintiff cites *Robinson v. City and County of San Francisco*, 41
23 Cal.App.3d 334, 337 (1974). In *Robinson*, the warrant named a Harold Cunningham, but the officers
24 arrested the well-known performer Smokey Robinson. The Court stated, "Where evidence is fairly
25 subject to more than one interpretation, the question of whether the jailer acted with reasonableness is
26 a triable factual issue for the jury to decide."

27 Unlike the *Robinson* situation, here, there is no factual question whether the officers had a
28 reasonable belief that plaintiff was the person named in the warrant. Plaintiff acknowledged in the City

8

of Hanford's prior motion that "[b]ased on the totality of the circumstances, the facts in their possession at the time and in reliance upon the information provided to them by their dispatch center, Officers Jimenez and Williams believed that Plaintiff was the subject of an outstanding arrest warrant and arrested him on the basis of that belief." (Doc.35, Plaintiff's Response to Undisputed Facts, no. 14.) In *Robinson*, the Court stated that "[t]he issue of reasonableness is not raised by the mere allegation by appellant that his arrest was unreasonable, but by the particular facts of this case." *Id.* At 337. Here, plaintiff cannot contest the reasonable belief of the officers that the arrest was lawful.

### 2. County Sheriff Knew or Should Have Known

Second, plaintiff argues in citing *Perez-Torres*, that the County knew or should have known that he was not the proper subject of the warrant. He argues that the live scan would have shown he was not the subject of the warrant.

Plaintiff has not presented any authority for the proposition that the City has a duty to employ a specific method to confirm the identity of a suspect. While plaintiff's position is that the County should have performed a "live scan," he has presented no authority that the County had a duty to do so. *See Gallegos v. City of Los Angeles*, 308 F.3d 987, 992 (9th Cir. 2002) (officers are not mandated one and only one way for police to confirm the identity of a suspect.)

Further, there are not any facts which raise a triable issue of fact that the County "knew or should or should have known" that plaintiff was the wrong person. All of the cases cited above, *Perez-Torres v. State of California*, *Sullivan v. County of Los Angeles*, *Martinez v. City of Los Angeles*, and *Lopez v. City of Oxnard*, require some form of official notice to the jailer - a court order, independent evidence, or some other official notice. None of these cases permit liability to the jailer upon mere protests by the person allegedly wrongly jailed. In the instant case, the County was not independently presented with facts which would cause it to investigate plaintiff's identity. The only evidence before the Court is that solely the plaintiff told the officers and the jailer that he was not the person in the warrant. This evidence is insufficient as a matter of law to raise a triable issue fact on the liability on the County. Thus, there are no facts from which a reasonable trier of fact could conclude that the County knew or should have known that plaintiff was the wrong man.

/////

**CONCLUSION AND ORDER**

For the reasons discussed above, this Court GRANTS defendant County of Kings' motion for summary judgment.

The clerk of this Court is DIRECTED to enter judgment in favor of defendant County of Kings and against plaintiff.  The clerk is also DIRECTED to close this case.

IT IS SO ORDERED.

**Dated:   March 1, 2008**                                    /s/ Lawrence J. O'Neill
                                                          UNITED STATES DISTRICT JUDGE